MARUBENI AMERICAN
CORPORATION,
Plaintiff,

v.

RETLA STEAMSHIP CO. et
al., Defendants.

KANEMATSU–GOSHO (U.S.A.)
INC., Plaintiff,

v.

RETLA STEAMSHIP CO. et
al., Defendants.

Nos. 75 C 772, 75 C 4077.

United States District Court,
N. D. Illinois, E. D.

May 7, 1976.

Warren C. Ingersoll, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs.

Daniel Schlorf, Bradley, Eaton, Jackman & McGovern, Richard Zito, Haskell & Perrin, Geoffrey G. Gilbert, Chicago, Ill., for defendants.

MEMORANDUM

LEIGHTON, District Judge.

I.

In two separate suits which the court has consolidated for the purpose of this memorandum, plaintiffs Marubeni America Corporation and Kanematsu-Gosho (U.S.A.) Inc., filed admiralty claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure against Retla Steamship Co. and other defendants. Pursuant to Rule 12(b)(2) and (5) of the Federal Rules of Civil Procedure, Retla has moved that service of process be quashed and that it be dismissed from these proceedings. The issue to be resolved is whether service of a summons within this district on a steamship agent who had not been authorized by Retla to accept service of process and who, at the time service was made, was not engaged on Retla's behalf, gives this court in personam jurisdiction over Retla for the purposes of these suits. This question arises from the following facts.

II.

Retla is a Liberian corporation, or corporate type entity, engaged as a common carrier of merchandise on the high seas with American headquarters in Long Beach, California. In its four-count complaint in No. 75 C 772, Marubeni alleged that on or about July 1, 1974, Retla accepted aboard its chartered vessel Roseline 116 packages of cold rolled steel coils in good condition at Pusan, Korea; and that the goods were in a damaged state when they were delivered to New Orleans, Louisiana. Then, in the remaining three counts, Marubeni alleged liability for damage to the rolled steel against other defendants in the chain of transportation that ultimately terminated in the Chicago area.

In its three-count complaint in No. 75 C 4077, Kanematsu-Gosho alleged that on or

about October 18, 1974, Retla accepted aboard its chartered vessel Bunga Chempaka 240 coils of hot rolled steel in good condition at Pokong, Korea; and that the goods were in a damaged state when they were delivered to New Orleans, Louisiana. Then, in the remaining two counts, Kanematsu-Gosho alleged liability for damage to the rolled steel against other defendants in the chain of transportation that ultimately terminated in the Chicago area.

On March 10 and December 2, 1975, a deputy United States Marshal of this district served summons directed to Retla by leaving a copy thereof with an employee in the offices of Intership, Inc. at 327 South LaSalle Street, Chicago. Intership is a steamship agent [1] whose association with Retla began in 1971 through an oral agreement made in New York. The services rendered by Intership included making arrangements with government immigration and customs agencies for entry of ships chartered by Retla which entered the Great Lakes, arranging for tugboats, pilots and linesmen; all of the formalities that are required to bring a foreign ship into port. Intership has not acted as agent for Retla with regard to materials moved by barge to the Chicago area from Louisiana or elsewhere. Compensated on a vessel by vessel basis, Intership does not handle stevedoring nor any cargo for Retla; neither does it prepare bills of lading nor advertise or solicit business on Retla's behalf. Although Intership is listed in several maritime publications as port agent for Retla, no Retla employee has ever maintained an office on Intership's Chicago premises nor is any Intership employee on Retla's payroll. Intership has never assisted Retla in the shipment of cargo from the Great Lakes; its services were limited to incoming vessels. Intership has never been authorized formally to contract on behalf of Retla with the exception of making arrangements for the entry of a vessel chartered by Retla. At his deposition Intership's president specifically stated that Intership has never been designated or authorized by Retla to accept service of process on its behalf. Intership was not engaged on Retla's behalf at the time service of process was delivered to Intership's office.

### III.

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides, in relevant part, that personal service of summons shall be made "[u]pon a domestic or foreign corporation * * * by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *." Fed.R.Civ.P. 4(d)(3). The rules further provide that service "[u]pon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, * * * is also sufficient if the summons and complaint are served * * * in the manner prescribed by the law of the state in which the district court is held for the service of

---

1. Intership has been variously referred to by the parties as a port agent, steamship agent and husbanding agent. Describing Intership as a "husbanding agent" is accurate to the extent that the word "husband" generally connotes one who manages another's property. See *Webster's Third New International Dictionary* 1104 (unabridged ed. 1963). In the law of admiralty, however, a "ship's husband" is a term which carries a precise meaning. A ship's husband is a confidential agent appointed by the owners, and frequently himself a part owner, to conduct and manage on shore whatever concerns the employment of the ship and for that purpose has authority to give orders for the necessary repair, refitting, and outfit of the ship, to see that she is properly manned, to procure a charter or freight for the vessel, and

fix and accept the conditions of either, to correspond with the master when aboard on the business of the ship, and to do what is needful for facilitating the prosecution of the voyage, to provide for the entry and clearance of the ship at her home port, to adjust and receive freight, pay the necessary disbursements, and to account for and distribute the proceeds among the owners. *MacLachlan's Law of Merchant Shipping* 132–133 (6th ed. 1923). The facts of these cases make it clear that with regard to the Roseline and Bunga Chempaka, Intership was not a ship's husband. See *Aird v. Weyerhaeuser S. S. Co.,* 169 F.2d 606 (3rd Cir. 1948); *Mitchell v. Chambers,* 43 Mich. 150, 5 N.W. 57, 65 (1880); compare *Erlandson v. C.I.R.,* 277 F.2d 70 (9th Cir. 1960).

summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." Fed.R.Civ.P. 4(d)(7). The statutes of the State of Illinois also provide that "[a] private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State * *." Ill.Rev.Stat.1975, ch. 110, § 13.3.

With regard to the application of Rule 4(d)(3) to these services on Retla, it is clear that Intership is not now nor has it ever been an "* * * agent authorized by appointment or by law to receive service of process * * *" on behalf of Retla; it is equally clear that Intership is not now nor has it ever been the "* * * registered agent * * *" of Retla as required by section 13.3 of the Illinois Civil Practice Act. Therefore, the inquiry is whether Intership was a "managing or general agent," as the words are employed in the federal rule or an "agent" as that term is employed in the Illinois statute.[2]

The cases which have considered this subject are by no means uniform; each turns on whether the aggregate actions and authority of one who is associated with a private foreign corporation are sufficient, within the context of a given case, to establish the agency. See Ingram v. MFA Ins. Co., 18 Ill.App.3d 560, 309 N.E.2d 690 (1974); Promotion Network, Inc. v. C. Da Silva, 63 F.R.D. 435 (N.D.Ill.1974); Sarro v. Illinois Mutual Life Ins. Co., 34 Ill.App.2d 270, 181 N.E.2d 187 (1962); compare Lindley v. St. Louis-San Francisco R.R. Co., 407 F.2d 639 (7th Cir. 1968). Several decisions have, however, dealt with the question within the factual context presented here. The rule to be derived from them is that service of process on a steamship agent is ineffective even if the defendant is doing business within the jurisdiction, where the agent was not acting as agent for the defendant at the time of service. See, Higgins v. California Tanker Co., 166 F.Supp. 569 (E.D.Pa.1957). Moreover, it has also been held that in a situation where a defendant has neither offices nor property in a jurisdiction, a showing that the person to whom process is delivered acted as agent for defendant's vessels only on sporadic occasions when the vessels were in port is insufficient to establish that the person served was acting as defendant's agent at the time of service. Zhemeck v. J. H. Winchester & Co., 23 F.R.D. 8 (E.D.Pa.1958).

In Holland v. Parry Nav. Co., 7 F.R.D. 471 (E.D.Pa.1947), in personam jurisdiction was sought to be established over a defendant corporation which neither was registered to do business in Pennsylvania nor had an office there. Although the defendant had no agent authorized to accept service of process in Pennsylvania, it had customarily designated a Philadelphia concern to act as its agent to facilitate movement of defendant's vessels when they were in the Port of Philadelphia. The responsibilities and authority of the agent in that case exceeded those of Intership; but they, too, were discharged without benefit of a written contract between the parties. On each occasion the agent acted on behalf of the defendant in Parry, it did so regarding a specific vessel on a specific call at the Port of Philadelphia. During the years 1944 to 1946, the agent had been so engaged on twenty of defendant's vessels. The court held that inasmuch as plaintiff had failed to show that the recipient of the service was performing the duties of an agent at the time the summons was delivered, the court was forced to conclude that the attempted service was ineffective. 7 F.R.D. at 472–73.

On the facts disclosed by these consolidated cases, this court is constrained to the same conclusion. Sufficient showing has not been made that Intership was a managing, general or other agent of Retla for the purpose of accepting service of process, or that at the time of attempted service, Intership was engaged in Retla's behalf. Accordingly, the motions to quash the services of process and dismiss as to Retla in Nos. 75 C 772 and 75 C 4077 are granted. Counsel

2. The fact that summons was served on Intership in Chicago distinguishes these cases from those cited by the parties which involve extraterritorial service of process.

for Retla may tender appropriate orders for entry.